**Vincent W. Davis, Esq. (SBN 125399)**
**Edna Wenning, Esq.  (SBN 130377)**
**Law Offices of Vincent W. Davis & Associates**
440 E. Huntington Drive Suite 100
Arcadia, CA 91006
Phone: 626-446-6442
Facsimile: 626-446-6454
Email: carol@vincentwdavis.com

Attorneys for Plaintiffs
ZARA SMITH; C.V. a minor
by and through his Guardian Ad Litem LORI LEWIS

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZARA SMITH; C.V. a minor by and through his Guardian Ad Litem LORI LEWIS, <br><br> Plaintiffs <br><br> vs. <br><br> COUNTY OF LOS ANGELES, by and through THE LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES; MARINE MANUKYAN, a social worker; PROVIDENCE HOLY CROSS MEDICAL CENTER, a California corporation; DR. COVERT, an individual; and DOES 1-25, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Violation of Civil Rights Under 42 U.S.C. § 1983 – 4th Amendment – Unreasonable Seizure <br><br> 2. Violation of Civil Rights Under 42 U.S.C. § 1983, 14th Amendment – Interference with Familial Association |

COMPLAINT FOR DAMAGES

Plaintiffs allege as follows:

1. This Complaint asserts violations of civil rights and related claims against the Providence Holy Cross Medical Center, Dr. Covert, the County of Los Angeles by and through the Los Angeles Department of Children and Family Services, social worker Marine Manukyan and various individual employees or representatives of the same.

**JURISDICTION AND VENUE**

2. The jurisdiction of this Court is invoked under Title 28 U.S.C. §§ 1331 and 1343. This suit is authorized by the First, Fourth and Fourteenth Amendments to the United States Constitution and Title 42 U.S.C. §1983. Plaintiffs seek monetary recovery in excess of $75,000 for damages incurred by them, and the events that give rise to litigation occurred in and around the County of Los Angeles, California.

**PARTIES**

3. Plaintiff Zara Smith (hereinafter "ZARA") is an individual, competent adult, who, during all times relevant as described in more detail below, engaged with Defendants' services regarding the birth of her minor child by and through multiple and numerous employees, representatives, or agents of the same.

4. Plaintiff C.V., born in or around October 8, 2020, is and was at all relevant times a minor and is currently in the legal and physical custody of his biological mother, Zara, as described in more detail below. Zara's mother, Lori Lewis, is C.V.'s guardian ad litem.

5. Zara and C.V. hereinafter together referred to as Plaintiffs.

6. Defendant Providence Holy Cross Medical Center (hereinafter "PROVIDENCE") is and was at all relevant times a medical center located at 15031 Rinaldi Street, Mission Hills, CA 91345.

7. Defendant Dr. Covert (hereinafter "DR. COVERT") is and was at all relevant times an individual and a doctor practicing at PROVIDENCE.

8. Defendant COUNTY OF LOS ANGELES is a local public entity organized under the

laws of the State of California. The LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES (hereinafter referred to as "DCFS") is an agency of Defendant COUNTY OF LOS ANGELES designated to administer laws and programs relating to protective services for children, foster care, and adoptions. DCFS operates under the direction of the LOS ANGELES County Board of Supervisors and the California Departments of Social Services and Health Services.

9. The Plaintiffs have during all times relevant, as described in more detail below, engaged with Defendants the DCFS, by and through numerous employees, representatives, or agents of the same, in and around COUNTY OF LOS ANGELES including, but not limited to Defendant MARINE MANUKYAN ("MANUKYAN") dealing with these parties both individually and collectively.

10. At all times relevant herein, DCFS employed Defendant MANUKYAN as a Social Worker and assigned MANUKYAN to oversee and manage the investigation, detention, placements, and services provided to the Minor Plaintiff C.V. while entrusted to the custody and care of COUNTY OF LOS ANGELES and DCFS. MANUKYAN was an individual residing, on information and belief, in the County of LOS ANGELES, and at all times relevant herein was an officer, agent, and employee of Defendant COUNTY OF LOS ANGELES and DCFS. Defendant MANUKYAN is sued herein in both her individual capacity and her official capacity as an employee of the COUNTY OF LOS ANGELES.

11. Defendant COUNTY OF LOS ANGELES was at all times alleged herein to be responsible for the appointment and promotion of employees of COUNTY OF LOS ANGELES and for the supervision, training, instruction, discipline, control, and conduct of said employees.

12. At all times alleged herein, Defendant COUNTY OF LOS ANGELES had the power, right, and duty to control the manner in which the individual Defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the

3

COMPLAINT FOR DAMAGES

California Constitution, the laws of the United States, the laws of the State of California, and the laws of the local municipalities.

13. Plaintiffs are informed and believe, and thereon allege, that each of the above-named Defendants was acting under color of law in committing the acts herein alleged and that in doing the things herein alleged, Defendant MANUKYAN was acting within the course and scope of their duties as employees or agents of COUNTY OF LOS ANGELES/DCFS.

14. DOES 1-25 are – on information and belief – unknown doctors, medical personnel, administrators, or other employees of Defendant PROVIDENCE, and who participated in, approved of, or otherwise acquiesced in the actions and misconduct of the other named Defendants as described herein, resulting in the deprivation of Plaintiff's civil rights and injuries to their persons, as is described below. These unknown defendants include policymakers that created, fostered, acquiesced in, ratified, and/or maintained the policies, customs, and/or practices that caused the deprivation of Plaintiffs' constitutional rights and their injuries.

15. Plaintiffs are ignorant of the true names and capacities of these Doe Defendants, though all are believed to have been employed by the respective public entities identified above, or otherwise acting in concert with other named defendants and their capacity were acting as state actors but alleges that each such defendants were in some intentional or negligent manner responsible for the injuries suffered by Plaintiffs.

16. Defendants, and each of them, performed the wrongful acts and omissions alleged herein in bad faith and with the knowledge that their conduct violated well and clearly established and settled law.

17. The Plaintiff is informed and believe and thereon allege that each of the named defendants was and is an agent, employee, principal, or employer of each of the remaining defendants and/or, vice/versa. Plaintiff further alleges that each of the above-named defendants is responsible in some manner for the occurrences herein alleged and that each of the above-named defendants conspired with, and/or aided and/or abetted each of the remaining defendants in committing the acts herein alleged.

## COMMON ALLEGATIONS

18. Each and every allegation set forth in each and every averment of this Complaint is hereby incorporated by this reference in each and every other averment, allegation, and count of this Complaint.

19. Plaintiff was previously deprived of her interests protected by the Constitution and/or laws of the United States of America, as well as California, and suffered injuries to their persons, and such deprivation was caused by Defendants – by commission and omission – while Defendants acted under color of law.

20. All acts and/or omissions perpetrated by each Defendant, except any governmental entity Defendant or any Defendant only in their official capacity, were done so with deliberate indifference to the Plaintiffs' constitutional rights.

21. All acts and/or omissions perpetrated by each Defendant, except any governmental entity Defendant or any Defendant only in their official capacity, were done in such a way that the need for more or different training is obvious, the inadequacy of the Defendants' training resulting in the violation of the Plaintiffs' constitutional rights.

22. On or about October 6, 2020, ZARA, who was 41 weeks pregnant at the time, came to Providence Holy Cross Medical Center to deliver her baby. She was transferred to the Labor and delivery room No. 1106. After examination, a nurse informed ZARA that her amniotic fluid was low due to the baby being overdue at 41 weeks. The laboratory work analysis showed that the numbers were normal.

23. On the night of October 7, 2020, a night shift nurse named Britney administered epidural to ZARA and induced labor. ZARA called her mother to be in the labor and delivery room with her because Dr. Yasharpour looked in and said that he was going to "pop her water bag." Being a first-time mother, ZARA did not understand what Dr. Yasharpour meant, and Dr. Yasharpour did not explain what he was going to do.

24. ZARA's mother arrived at around 11 – 11:30 a.m., but at that time, Dr. Yasharpour did not visit his patient ZARA. The nurse on duty monitored the baby's heart rate and vital signs

COMPLAINT FOR DAMAGES

along with ZARA's. She reported that ZARA and the baby were doing fine. At that time, there was a rotation of shift duty at PROVIDENCE. A group of nurses came into the room and reported that the child's pulse rate had decreased, but the baby's heart rate was always going up to 181 to 190. ZARA did not know that this caused stress on the baby.

25. Despite the baby's distress, Dr. Yasharpour wanted to further induce ZARA and wait to see if she dilated more than 8 ½ cms. ZARA's mother asked for an emergency cesarean section for her daughter because the baby was in distress, and this request made Dr. Yasharpour angry. ZARA and her mother asked for a second opinion from PROVIDENCE which was declined.

26. Based on Dr. Yasharpour's conduct and on information and belief, Dr. Yasharpour disliked ZARA's mother because she was assisting her daughter and was speaking on her behalf. Dr. Yasharpour shouted at ZARA's mother and told her to shut up. At the time, ZARA's mother was her labor patient partner for ZARA and her baby and who was under a lot of stress.

27. On October 8, 2020, ZARA was moved to PROVIDENCE's maternity ward. At about 10:00 a.m. minor C.V. was born via cesarean section. The baby was in distress.

28. After birth, C.V. was given the Covid-19 test by DR. COVERT without ZARA's consent. ZARA verbally objected to the covid test for her newborn baby and DR. COVERT responded stating, "I am going to do it anyway," and it was done.

29. ZARA and her mother reported DR. COVERT's conduct to PROVIDENCE's Risk Management personal intake through "Claudia." ZARA and her mother also spoke with the director of Risk Management named Jody. They both explained the situation to risk management.

30. PROVIDENCE informed ZARA that she could not see her baby C.V. without taking a Covid-19 test, thereby violating her rights under the Constitution and/or laws of the United States of America, and California. Furthermore, PROVIDENCE unreasonably threatened and forced ZARA to take a Covid-19 test stating that if she did not take the covid-19 test she would not be able to visit her baby. At that time, ZARA was still under

stress from the epidural analgesia. ZARA chose not to take the covid-19 test. Due to ZARA's refusal to take a Covid-19 test, PROVIDENCE through Dr. COVERT called a Social Worker defendant MANUKYAN who immediately placed a hospital hold on C.V. Zara and the baby tested negative for covid-19.

31. ZARA could only have a video chatting with her baby. She was not able to hold her newborn son. The PROVIDENCE nurses who cared for the baby reported that ZARA and her baby boy were in a stable condition. On October 9, 2020, PROVIDENCE's respiratory therapist reported that the baby's condition was improved, and the baby would be taken off oxygen.

32. Based on information and belief, DR. COVERT and defendant MANUKYAN conspired to place a hospital hold on newborn C.V. without any reasonable basis for doing so. Dr. Covert was retaliating against ZARA and her mother for reporting his conduct to PROVIDENCE's risk management and social worker MANUKYAN either acquiesced, agreed and/or conspired with DR. COVERT in separating mother and child without any reasonable investigation and without any exigent circumstances nor any warrant. ZARA was never advised about the reason for the hospital hold.

34. Hospital holds are clearly seizures within the context of the 4th and 14th amendments to the U.S. Constitution and require consent, exigency, or a warrant. *Kirkpatrick v. Cty of Washoe,* 843 F.3d 784, 793 (9th Cir. 2016). As of the birth of C.V. on October 8, 2020, C.V. and ZARA constituted a family unit, entitled to constitutional protections, including, but not limited to, the right to live together free of unwarranted governmental interference, the right to familial privacy, and the right of parents to reasonably direct the upbringing of their children, including medical care and medical decisions for their children. ZARA was deprived of the joy of holding her newborn son for the very first time right after delivery, a family bonding that was denied the first time mother because of the unlawful seizure of the baby by means of a hospital hold without a warrant, consent, or exigency.

7

COMPLAINT FOR DAMAGES

# FIRST CAUSE OF ACTION

Violation of Civil Rights Under 42 U.S.C. § 1983 – 4th Amendment –

Unreasonable Seizure

Against Defendants PROVIDENCE, DR. COLVERT, SOCIAL WORKER MANUKYAN, and Doe Defendants 1-25

35. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

36. At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment IV and XIV to the United States Constitution to due process of law and the equal protection of the laws, as well as the right to be free from unlawful searches and seizures under the Fourth Amendment, were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiffs of their constitutional rights, which violated those rights and violated the Fourteenth Amendment to the United States Constitution.

37. The 4th Amendment right of a child not to be seized from the custody of its parents is a personal right. A child has a corollary right-equal and identical to that of its parents-in, not being dislocated from the emotional attachments that derive from daily contact with the child's family. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000); *Anderson-Francios v. County of Sonoma*, 415 Fed Appx. 6, 9 (9th Cir. 2011).

38. C.V. was taken away from his mother right after birth. Plaintiff ZARA and her mother were not provided any reason for the hospital hold on C.V.. As a result, ZARA was deprived of the joys of holding her firstborn right after birth.

39. The actions of Defendants were willful, knowing, purposeful, and were done with the understanding that such actions would reasonably cause ZARA and her minor child C.V. to suffer severe emotional harm, as well as to place minor C.V. in a less secure and healthy environment than if C.V. remained with his mother. ZARA was unlawfully deprived of the joy of holding her newborn son right after delivery, the joy of motherhood

which, to her, would be one of the fulfillments of being a woman. The first-time bonding between mother and son from birth can never be replayed again. Time does not move backwards. This momentous event was denied mother and son.

40. The actions of Defendants – including but not limited to Defendants PROVIDENCE and DR. COVERT, social worker MANUKYAN and DOES 1-25 – which was contrary to the best interests and needs of C.V. were done solely to inflict harm upon Plaintiffs.

41. Defendants' actions were taken with deliberate indifference to Plaintiffs' rights. Defendants and each of them maliciously conspired to violate the civil rights of the Plaintiff, including violation of Plaintiffs' rights found in the First and Fourth and Fourteenth Amendments of the United States Constitution, by, but not limited to, removing, detaining, and continuing to detain the Plaintiff C.V. from the care, custody, and control of his mother ZARA, without proper or just cause and/or authority.

42. DCFS Defendants did not at any time consider, implement, or attempt any aspect of the "reasonable efforts" required by California law, requirements under federal law and/or regulations regarding social work in the area of child protection before removal of a child from a parent or guardian. This conduct was and is the result of the deliberate indifference to the rights and safety of parents and children evidenced by the failure to adequately train, supervise, or discipline employees such as the employee defendants herein of Defendant COUNTY OF LOS ANGELES and DCFS.

43. The acts and omissions of COUNTY OF LOS ANGELES/DCFS Defendants, and each of them, were done by COUNTY OF LOS ANGELES/DCFS Defendants under color of state law in their capacity as a municipality charted under state law, and as policy-making authorities to which the government agency delegated their governing powers in the subject matter in which these policies were promulgated or decisions taken, or customs and practices followed.

44. The above-alleged conduct of COUNTY OF LOS ANGELES/DCFS Defendants was consistent with the unconstitutional policies, customs, and practices set forth by DCFS and was ratified by said Defendant COUNTY OF LOS ANGELES.

45. Plaintiffs are informed and believe and thereon allege that Defendant COUNTY OF LOS ANGELES failed to properly train, supervise, or discipline their agents and officers in writing and submitting reports to the court to ensure their accuracy and veracity, and this improper training, supervision, and discipline caused Plaintiffs' constitutional rights to be violated. Further, Defendant COUNTY OF LOS ANGELES, by and through DCFS, are responsible for implementing, sanctioning and/or condoning the unconstitutional policies, customs and/or practices that allowed their agents and officers to violate Plaintiffs' rights.

46. In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiffs' rights, or at least, with a conscious, reckless, and callous disregard of Plaintiffs' rights and to the injurious consequences likely to result from the violation of said rights.

47. As a direct and proximate result of COUNTY OF LOS ANGELES/DCFS Defendants' actions, Plaintiffs have suffered and will continue to suffer physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred and will continue to incur attorney fees, costs, and expenses, including those authorized by 42 U.S.C. section 1988, to an extent and in an amount subject to proof at trial.

## SECOND CAUSE OF ACTION
### Violation of Civil Rights Under 42 U.S.C. § 1983 – 4th and 14th Amendments – Interference with Familial Association. Monell Cause of action Against Defendant COUNTY OF LOS ANGELES DCFS

48. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

49. The parental right secured by the Fourteenth Amendment "is not reserved for parents with full legal and physical custody." *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010); *see also Burke v. Cty. of Alameda*, 586 F.3d 725, 733 (9th Cir. 2009) (holding that non-custodial parents have a reduced liberty interest in the companionship, care, custody, and management of their children). At the same time, however, "[p]arental rights do not spring full-blown from the biological connection between parent and child." *Lehr v. Robertson*, 463 U.S. 248, 260, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (quoting *Caban v. Mohammed*,

441 U.S. 380, 397, 99 S.Ct.1760, 60 L.Ed.2d 297 (1979) (Stewart, J., dissenting)) (emphasis omitted). Hospital holds are clearly seizures within the context of the 4th and 14th amendments to the U.S. Constitution and require consent, exigency, or a warrant. *Kirkpatrick v. Cty of Washoe,* 843 F.3d 784, 793 (9th Cir. 2016).

50. On or about October 8, 2020, C.V. was removed from his mother, ZARA's physical and legal custody. The removal was pretextual was not supported by the factual circumstances surrounding any investigation or evaluation of the minor Plaintiff C.V. and his needs and ZARA's needs.

51. The removal of the minor Plaintiff C.V. from the care of his mother ZARA was done without probable cause, exigent circumstances, a signed warrant, or any other lawful basis that would otherwise comport with the substantive and procedural requirements under state and federal law that are protected by the due process rights under the Fourteenth Amendment to the United States Constitution, which expressly includes the right to "Familial Association" between parents and their minor children.

52. Plaintiff's right to familial association, which was violated when Defendants removed and held the minor Plaintiff C.V. in governmental/foster custody, was reasonably established at the time of the events described herein.

53. Because of the illegal removal, the minor Plaintiff C.V. was placed with caregivers other than Plaintiff ZARA, his natural and legal mother, for a period of approximately from birth until the hold was removed after a few days, and because of the illegal removal, the minor Plaintiff C.V. was placed with caregivers other than Plaintiff ZARA, his natural and legal mother preventing immediate bonding after birth, and thereby suffered losses in the form of general damages – including but not limited to extreme emotional distress and psychological harm.

54. Plaintiff asserts that the above-described actions were obviously illegal and were done with purposeful and malicious intent such that punitive damages are warranted under the law.

55. The foregoing unwarranted seizure of C.V. from his mother at birth while in hospital

was due to defendant's DCFS and its agents' failure to do their job. Reports of abuse and requests to be transferred were ignored by defendant PROVIDENCE and social workers. These facts raise concerns and questions about how much progress defendant COLA/DCFS has made since a Blue Ribbon Commission recommended changes in the numerous serious problems besieging the County of Los Angeles in the wake of a 2013 death of an eight-year old boy months after abuse reports had been made. This also confirms the concerns of the California State Auditor who conducted an audit of the health and safety of children in the care of the Los Angeles County Department of Children and Family Services (COLA/DCFS) in their report entitled "Los Angeles County Department of Children and Family Services, the State Auditor notes: "[i]t has not adequately ensured the health and safety of all children in its care," dated May 2019 as REPORT 2018-126. The letter signed by Elaine M. Howler, CPA, California State Auditor states "Our assessment concludes that the department unnecessarily risks the health and safety of the children in its care because it does not consistently complete child abuse and neglect investigations, and related safety and risk assessments, on time or accurately, " and "As a result, the department leaves some children in unsafe and abusive situations for months." She further remarked, "Further, despite budget increases that allowed the department to hire more social workers and reduce caseloads, it did not comply with several other state-required child welfare practices," and that "The department did not consistently perform required home inspections and criminal background checks before placing children with relatives of their families . . ." Based on the State Auditor's findings, Defendant COLA/DCFS has a prevailing custom and practice of recklessly seizing children without warrant, consent and exigency such as what transpired in this case despite increase in budget to allow decreased caseloads of social workers.

56.   The County refuses to admit that its social workers commit a constitutional violation

when they make false statements, and/or suppress known exculpatory evidence in reports or other documents filed in the juvenile court and continues to do so. The County denies that defendants social worker MANUKYAN and others violated plaintiffs' rights when they made false statements, and/or suppressed exculpatory evidence in reports or other documents filed in the juvenile court. The County ratified and/or approved the inclusion of false statements and/or suppression of known exculpatory evidence in reports or other documents filed in the juvenile court.

57. The County is aware that its social workers make false statements and/or suppress known exculpatory evidence in reports or other documents filed in the juvenile court and yet defendant County made a knowing and conscious decision to refrain from promulgating a policy and recurrent training to prevent such misconduct, and has consistently and knowingly failed to provide any training to their social workers to inform them of the rights of parents and children not to be lied about in court reports and to maintain bodily integrity while in foster care and the requirement that all exculpatory evidence is presented to the juvenile court.

58. The County's decision to disregard these constitutional protections in the face of a known need for such policies as reflected and documents in the Auditor's Report in order to prevent the specific misconduct alleged in this case e.g., the known need for a specific policy prohibiting the aforementioned conduct, is itself a "policy" decision which constitutes a policy of deliberate indifference.

59. This policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training which the State Auditor also documented, was a substantial factor in causing plaintiff's harm, in that defendant social worker MANUKYAN and agents/servants and DOES 1-10 followed and acted pursuant to the regularly established customs, practices, and well-known and accepted standard operating procedures of DCFS when they made false statements, turned a blind eye to plaintiffs' complaints and/or suppress known exculpatory evidence, in reports and other

documents filed in juvenile court-none of which was constitutionally permissible.

60. Plaintiffs are informed and believe that defendant County of Los Angeles failed to establish, adopt, and/or implement policies, procedures and training regarding the constitutional protections afforded to a parent and child by the First, Fourth and Fourteenth Amendments. Without such policies, procedures, customs and/or practices in place, the County of Los Angeles social workers were allowed and permitted to engage in conduct that was in violation of Plaintiffs' constitutional rights as more specifically alleged in the general allegations above.

61. Defendants COLA/DCFS, including through their respective entities, breached their duties and obligations to Plaintiffs including but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting the Defendants and DOES 1 through 25, to engage in the unlawful and unconstitutional conduct as herein alleged.

62. Defendants COLA/DCFS knew, or should have known, that by breaching the above-mentioned duties and obligations that it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged by their wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiffs; and that such policies would subject them to general damages which Plaintiffs assert herein.

63. These actions, and/or inactions, of Defendants COLA/DCFS are the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiffs have incurred, and will continued

to incur, attorneys' fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray and seek the following relief as to the Causes of Action stated above:

1. For general damages according to proof at trial on each cause of action for which such damages are available.

2. For special damages according to proof on each cause of action for which such damages are available.

3. For punitive damages according to proof at trial on each cause of action for which such damages are available.

4. For reasonable attorney fees and costs of suit, as allowed under the law.

5. For such other relief as the Court deems proper and just.

6. Civil penalties.

## DEMAND FOR A JURY TRIAL

Plaintiffs respectfully demand a jury trial for all claims asserted here.

RESPECTFULLY SUBMITTED,

Date: October 6, 2022

_____
Vincent W. Davis, Esq.
Edna V. Wenning, Esq.
Attorney for Plaintiffs